[No. B194195. Second Dist., Div. Seven. Oct. 3, 2007.]'

YOKO ZIPUSCH, Plaintiff and Appellant, v.
LA WORKOUT, INC., Defendant and Respondent.

1282

COUNSEL

The Mandell Law Firm and Mara E. J. Burnett for Plaintiff and Appellant.

Law Offices of Virgil L. Roth, Virgil L. Roth and Anthony A. Dimonte for Defendant and Respondent.

---

OPINION

**JOHNSON, Acting P. J.**—Yoko Zipusch appeals from a summary judgment entered in favor of Northridge GG, Inc. (Northridge), in her negligence action for personal injuries sustained when her foot became stuck to a sticky substance on a treadmill at a health club owned by Northridge.[1] Zipusch contends the trial court erroneously concluded there were no triable issues of material fact regarding two matters: first, whether the liability release contained in the signed membership agreement exculpated the health club from its own negligence; and second, whether the health club negligently failed to inspect and clean its exercise equipment. On de novo review, we conclude (1) the release is too ambiguous to insulate the health club from liability to Zipusch for its own negligence, and (2) triable issues of material fact exist regarding whether the health club negligently failed to inspect and maintain its exercise equipment. Accordingly, we reverse the judgment and remand the matter for further proceedings.

## FACTS AND PROCEEDINGS BELOW

Zipusch signed a "Membership Agreement" in October 2004 and thereafter became a member of LA Workout. The double-sided membership agreement contains a readily identifiable assumption of risk provision located at the bottom of the front page which states: "The use of the facility at LA Workout naturally involves the risk of injury to yourself or your guest, whether you or someone else cause [*sic*] it. As such you understand and voluntarily accept this risk and agree that LA Workout will not be liable for injury, including without limitation, personal, bodily or mental injury, economic loss or damage to you, your spouses [*sic*], guests, unborn child, or relatives resulting

---

[1] LA Workout, Inc., is the predecessor-in-interest of Northridge GG, Inc. Northridge GG, Inc. purchased LA Workout on December 6, 2004, pursuant to bankruptcy proceedings. Northridge defended this action brought by Zipusch.

from the negligence or other acts of anyone else using LA Workout. If there is any claim by anyone based on injury loss or damage described here, which involves you or your guest, you agree to (1) defend LA Workout against such claims and pay LA Workout for all expenses relating to the claim and (2) indemnify LA Workout for all liabilities to you, your spouse, guests, relatives, or anyone else, resulting from such claims. The member or guest will defend and indemnify LA Workout for any negligence EXCEPT the sole negligence of the club. This agreement is not effective until you sign and date it. By signing below, you agree to the terms above."

On or about December 10, 2004, Zipusch allegedly sustained injuries when her foot became stuck to a sticky substance on a treadmill at the health club, causing her to lose her balance. Zipusch filed a complaint against LA Workout for general negligence and premises liability alleging its failure to inspect and maintain the exercise equipment resulted in the sticky substance remaining on the treadmill, causing her to lose her balance when her foot became stuck to it.

Northridge answered the complaint and later moved for summary judgment. In the motion, Northridge argued the release provision of the membership agreement exculpated the health club from claims arising during a member's use of the athletic facilities. Circumventing the exact wording of the release, Northridge argued in the health club context parties reasonably contemplate release provisions bar claims arising while exercising. Thus, Northridge appeared to argue, the unambiguous existence of a release exculpates a health club from claims arising while exercising without examining what the release's exact wording actually covers. Additionally, irrespective of the release provision, Northridge argued Zipusch could not raise a triable issue of material fact regarding any alleged negligence on the part of the health club, including its actual or constructive notice of the sticky substance on the treadmill.

Zipusch opposed the motion for summary judgment, arguing the release only barred claims against the health club caused by negligent third party conduct and, alternatively, the release contained an ambiguity which should be construed against the drafter, LA Workout. Either way, Zipusch argued the release did not bar claims against the health club for its own negligence. After addressing the threshold issue of the release, Zipusch presented evidence indicating the health club negligently inspected and maintained its equipment. First, Zipusch stated in her declaration, based on her own observations, 85 minutes had elapsed between the time of the accident and the last time a gym employee had inspected and cleaned the equipment. Zipusch argued a reasonable trier of fact could find the health club negligently inspected and maintained its exercise equipment by inferring the sticky substance was on

the treadmill for this time period and concluding it was unreasonable and negligent to not remove the sticky substance during this time period. Additionally, at his deposition, an assistant manager of the health club testified the undersides of treadmill belts are not inspected in the normal course by gym employees monitoring the exercise area throughout the day. Zipusch argued a reasonable trier of fact could find this failure, in combination with the 85-minute gap between inspections, constituted negligence.

The trial court granted summary judgment in favor of Northridge based on the assumption of risk provision of the membership agreement, finding that while the release did not bar all claims arising during use of the health club, it did bar all claims involving third party conduct. The trial court found Zipusch had presented no evidence establishing the sticky substance materialized on the treadmill by non-third-party conduct.

## DISCUSSION

### I. *STANDARD OF REVIEW.*

Summary judgment is proper only where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.[2] "We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion . . . and the uncontradicted inferences the evidence reasonably supports. [Citation.]"[3] In the trial court, a defendant "has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto."[4]

As our Supreme Court has made clear, a defendant moving for summary judgment "has shown that the plaintiff cannot establish at least one element of the cause of action by showing that the plaintiff does not possess, and cannot reasonably obtain, needed evidence: The defendant must show that the plaintiff *does not possess* needed evidence, because otherwise the plaintiff might be able to establish the elements of the cause of action; the defendant must also show that the plaintiff *cannot reasonably obtain* needed evidence, because the plaintiff must be allowed a reasonable opportunity to oppose the

---

[2] Code of Civil Procedure section 437c, subdivision (c).

[3] *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].

[4] Code of Civil Procedure section 437c, subdivision (p)(2).

motion [citation]."[5] The defendant does not meet its burden on summary judgment "simply" by pointing out the " *'absence of evidence* to support' an element of the plaintiff's cause of action [citation] . . . ."[6]

## II. *THE ASSUMPTION OF RISK PROVISION OF THE MEMBERSHIP AGREEMENT DID NOT RELEASE LA WORKOUT/NORTHRIDGE FROM LIABILITY.*

The assumption of risk provision of LA Workout's membership agreement contemplates two types of potential injuries: injuries to a member caused by others, and injuries to others caused by a member. The provision begins with an introductory sentence warning about the inherent risks of using an exercise facility. Read as a whole, the most reasonable interpretation of the risk provision is the parties' intention to exculpate the health club from injuries, whether self-inflicted or caused by other members, sustained from the *inherent* risks of exercising at a health club. For example, the health club would be exculpated if a member, either negligently or nonnegligently, dropped a heavy weight on himself or another member. However, the risk section does not contemplate exculpating the health club from its own negligence. Thus, as discussed more fully below, the trial court improperly granted summary judgment.

### A. *Contractual Ambiguity Should Be Construed Against the Drafter, Rendering a Purported Release Unenforceable.*

The interpretive doctrine of construing contractual ambiguity against the drafting party is well established.[7] While " 'a release need not achieve perfection,' "[8] it must, nonetheless, be clear, explicit and comprehensible "to an ordinary person untrained in the law."[9] When examining a release, it must be "clear, explicit, and comprehensible in itself and when considered and read in whole with the entire agreement."[10] If an alternative, " 'semantically

---

[5] *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854 [107 Cal.Rptr.2d 841, 24 P.3d 493]; see *Gaggero v. Yura* (2003) 108 Cal.App.4th 884, 889–890, 891–892 [134 Cal.Rptr.2d 313].

[6] *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at page 855, footnote 23.

[7] Civil Code section 1654.

[8] *Paralift, Inc. v. Superior Court* (1993) 23 Cal.App.4th 748, 755 [29 Cal.Rptr.2d 177].

[9] *Leon v. Family Fitness Center (#107), Inc.* (1998) 61 Cal.App.4th 1227, 1235 [71 Cal.Rptr.2d 923].

[10] *Sanchez v. Bally's Total Fitness Corp.* (1998) 68 Cal.App.4th 62, 69 [79 Cal.Rptr.2d 902].

reasonable' " meaning exists the release is ambiguous.[11] "The threshold determination of whether a document contains ambiguities is subject to independent review."[12]

█  In the recreational sports context, parties are free to contractually redistribute risk because release provisions "do not implicate the public interest and therefore are not void as against public policy."[13] Unsurprisingly, a line of California cases has upheld unambiguous release provisions involving health clubs. Some of these releases are broad with exculpation extending beyond injuries resulting from the inherent risk of exercising at a health club.

█  In *Benedek v. PLC Santa Monica*,[14] for example, a health club member sustained injuries while adjusting an overhead television in preparation for using an elliptical exercise machine. Though repositioning a television is arguably unrelated to the inherent risks associated with exercising, the court affirmed summary judgment because the plaintiff had signed an unambiguous release exculpating the health club from all injuries sustained while on the premises irrespective of whether the injury related to exercise.[15] Similarly, in *Capri v. L.A. Fitness International, LLC*,[16] a health club member who signed a broad release and waiver of liability and later slipped and fell on algae growing on a swimming pool deck, was barred from bringing a general negligence claim against the health club, despite the court's determination the risk of algae growing on a pool deck was not an inherent risk of swimming. Provided a release is clear, explicit and comprehensible, guaranteeing both parties contemplated the redistribution of risk, a release can relieve a health club of due care it otherwise would be obligated to provide.

█  However, if a release is ambiguous, and it is not clear the parties contemplated redistributing the risk causing the plaintiff's injury, then the contractual ambiguity should be construed against the drafter, voiding the purported release. In *Leon v. Family Fitness Center (#107), Inc.*,[17] a plaintiff who was injured when a sauna bench on which he was lying collapsed was not barred from bringing a negligence claim against the health club, though the signed membership agreement contained a general release provision.

---

[11] *Benedek v. PLC Santa Monica* (2002) 104 Cal.App.4th 1351, 1358 [129 Cal.Rptr.2d 197].

[12] *Paralift, Inc. v. Superior Court, supra,* 23 Cal.App.4th at pages 754–755.

[13] *Benedek v. PLC Santa Monica, supra,* 104 Cal.App.4th at pages 1356–1357; cf. Civil Code section 1668.

[14] *Benedek v. PLC Santa Monica, supra,* 104 Cal.App.4th at page 1355.

[15] *Benedek v. PLC Santa Monica, supra,* 104 Cal.App.4th at pages 1358–1359.

[16] *Capri v. L.A. Fitness International, LLC* (2006) 136 Cal.App.4th 1078, 1081–1082, 1084–1085, 1087–1088 [39 Cal.Rptr.3d 425] (reversed on negligence per se claim alleging violation of Health and Safety Code provisions).

[17] *Leon v. Family Fitness Center (#107), Inc., supra,* 61 Cal.App.4th at pages 1230–1231.

Reversing summary judgment, the court found a sauna bench collapsing was not the type of injury contemplated by parties when signing a general release provision contained in a health club membership agreement. The appellate court explained, the health club's "negligence was not reasonably related to the object or purpose for which the release was given, that is, as stated, injuries resulting from participating in sports or exercise rather than from merely reclining on the facility's furniture."[18]    ■    Though it is unnecessary for a release to contemplate every possible specific act of negligence of the defendant, nonetheless, the release must clearly, explicitly and comprehensibly contemplate the type of injury applicable to a particular negligent act.[19] When parties intend for an express assumption of risk provision to exceed the inherent risk of the endeavor for which the release is signed, it is especially important for parties to clearly, explicitly and comprehensibly state the inclusion of noninherent risks.[20]

B.  *The Release Does Not Explicitly Exculpate LA Workout/Northridge from Its Own Negligence, and Ambiguity Exists as to Whether Another Party's Previous Negligence Exculpates LA Workout/Northridge from Its Own Subsequent Negligence.*

The assumption of risk provision does not release LA Workout or Northridge from its own negligence. After an introductory sentence, which alludes to the inherent risks of exercising at a health club, the assumption of risk provision contemplates two types of injuries: injuries to the member caused by others,[21] and injuries to others caused by the member.[22] Zipusch agreed to exculpate LA Workout from the former type of injury and indemnify for the latter type. The distinction between the exculpatory and the indemnification clauses is important. As discussed below, the exculpatory clause precludes lawsuits against LA Workout from unpreventable injuries

---

[18] *Leon v. Family Fitness Center (#107), Inc., supra*, 61 Cal.App.4th at page 1235.

[19] See *Sanchez v. Bally's Total Fitness Corp., supra*, 68 Cal.App.4th at pages 68–69.

[20] See *Leon v. Family Fitness Center (#107), Inc., supra*, 61 Cal.App.4th at pages 1234–1235.

[21] The exculpatory clause of the assumption of risk provision states: "[Y]ou understand and voluntarily accept this risk [the inherent risk of using an exercise facility] and agree that LA Workout will not be liable for injury, including without limitation, personal, bodily or mental injury, economic loss or damage to you, your spouses [*sic*], guests, unborn child, or relatives from the negligence or other acts of anyone else using LA Workout."

[22] The indemnification clause of the assumption of risk provision states: "If there is any claim by anyone based on injury loss or damage described here, which involves you or your guests, you agree to (1) defend LA Workout against such claims and pay LA Workout for all expenses relating to the claim and (2) indemnify LA Workout for all liabilities to you, your spouse, guests, relatives or anyone else, resulting from such claims. The member or guest will defend and indemnify LA Workout for any negligence EXCEPT the sole negligence of the club."

caused by third party conduct in the natural course of exercising. The indemnification clause obligates a third party who causes injury to reimburse LA Workout for its share of any resulting judgment. In other words, the exculpatory clause concerns the scope of lawsuits which can be brought against LA Workout while the indemnification clause concerns responsibility for paying damages arising from those lawsuits.[23] For example, if LA Workout were able to identify a third party who caused an accident, LA Workout could obtain indemnification from that third party for any judgment arising from that accident. However, the indemnification clause does not eliminate LA Workout's liability to an injured member or insulate it from suit.

The exculpatory clause of the risk provision does not release LA Workout from its own negligence. Crucially, the exculpatory clause only contemplates injuries arising "from the negligence or other acts of anyone else using LA Workout." By itself this clause does not clearly, explicitly and comprehensibly contemplate exculpating LA Workout from its own negligence. Nor is such an interpretation the only semantically reasonable meaning of the clause. In fact, it is more plausible the clause only excludes LA Workout from liability for the negligence of others and not its own negligence.

Unlike the releases involved in *Benedek*[24] and *Capri*,[25] the release Zipusch signed did not explicitly exculpate LA Workout or Northridge from all liability. Northridge asserts the exculpatory clause applies because the sticky substance could not have materialized by any reason other than third party

---

[23] Northridge erroneously conflates this very distinction by asserting a member cannot bring a lawsuit against LA Workout unless it is "sole[ly] negligen[t]." However, this is an incorrect interpretation of the terms of the release. The "sole negligence" language only pertains to the indemnification clause. Moreover, the indemnification clause actually supports the assertion that a claim may be brought against LA Workout when it is jointly responsible for a member's injury. If a lawsuit could only be brought against LA Workout when it was exclusively responsible, then it would be nonsensical for a third party to indemnify LA Workout in a situation of joint liability because the situation could never occur.

[24] *Benedek v. PLC Santa Monica, supra,* 104 Cal.App.4th at page 1354 (" 'The SPA and HOTEL . . . shall not be liable . . . for any loss of or injury to person or property. This waiver . . . is intended to be a complete release of any responsibility for personal injuries and/or property loss/damage sustained by any MEMBER or any guest of any MEMBER while on the HOTEL and/or SPA premises, whether using exercise equipment or not' ").

[25] *Capri v. L.A. Fitness International, LLC, supra,* 136 Cal.App.4th at page 1081 (" 'Member hereby releases and holds L.A. Fitness . . . harmless from all liability to Member . . . for any loss or damage, and waives any claim or demands therefor, on account of injury to Member's person, or property, including injury leading to the death of Member, whether caused by the active or passive negligence of L.A. Fitness or otherwise, while Member is in, upon, or about L.A. Fitness premises or using any L.A. Fitness facilities, services or equipment.' ").

conduct.[26] Even if we assume the truth of this unsupported assertion, the exculpatory clause does not clearly relieve LA Workout or Northridge from all liability caused by a third party, especially when read in conjunction with the introductory sentence of the assumption of risk provision which states "[t]he use of the facility . . . *naturally* involves the risk of injury." (Italics added.) A semantically reasonable interpretation of both the exculpatory clause, and its relation to the assumption of risk provision and the entire agreement, is the parties' intention to exculpate LA Workout from *unpreventable* injuries caused by others in the *natural* course of exercising. By stating LA Workout will not be liable for the "natural" risks associated with exercising, LA Workout has merely expressly stated the inherent risks of exercising at a health club, which, absent a release provision, it would not be liable for anyway. LA Workout has not, as many other health clubs have done, removed its preexisting duty to not enhance the inherent risks of exercising at a health club.

The assumption of risk provision does not clearly, explicitly and comprehensibly exculpate LA Workout or Northridge from its own negligence. Accordingly, it was improper for the trial court to rule the assumption of risk provision barred Zipusch's negligence and premises liability action.

III. *LA WORKOUT/NORTHRIDGE'S ALLEGED NEGLIGENT INSPECTION AND MAINTENANCE OF EXERCISE EQUIPMENT IS NOT AN INHERENT RISK OF EXERCISING AT A HEALTH CLUB.*

Absent a contractual release from liability, Northridge nonetheless can prevail on summary judgment if Zipusch's alleged injury was an inherent risk of exercising at a health club. As our Supreme Court has made clear, "resolution of the question of the defendant's liability in such cases turns on whether the defendant had a legal duty to avoid such conduct or to protect the plaintiff against a particular risk of harm."[27] Rather than examining the "plaintiff's subjective knowledge or appreciation of the potential risk,"[28] the inquiry depends upon whether the defendant breached its general duty "to use due care not to increase the risks to a participant over and above those inherent in the sport."[29] "Thus, although a ski resort has no duty to remove

---

[26] Northridge has not satisfied its burden on summary judgment of demonstrating the sticky substance necessarily resulted from third party conduct, thereby triggering the applicability of the exculpatory clause. For example, it is possible a health club employee spilled the sticky substance. Thus, Northridge cannot technically assert the assumption of risk provision as a complete defense. However, our analysis does not depend on this failure.

[27] *Knight v. Jewett* (1992) 3 Cal.4th 296, 316–317 [11 Cal.Rptr.2d 2, 834 P.2d 696].

[28] *Knight v. Jewett, supra,* 3 Cal.4th at page 316.

[29] *Knight v. Jewett, supra,* 3 Cal.4th at page 316.

moguls from a ski run, it clearly does have a duty to use due care to maintain its towropes in a safe, working condition so as not to expose skiers to an increased risk of harm."[30]

■ In determining whether the accident was an inherent risk of exercising at a health club we turn to the record and common sense. Generally, defective or unnecessarily dangerous equipment is not considered an inherent risk of a sport.[31] This is entirely sensible. The main concern animating inherent risk analysis is the potential for chilling vigorous participation and altering the fundamental nature of a particular sport.[32] However, these concerns are not present in lawsuits alleging defective or unnecessarily dangerous equipment where the issue is whether the defendant increased the risk above the inherent risk of the sport.

■ Here, Zipusch alleges the health club negligently inspected and maintained its exercise equipment, allowing a risk to remain for an unreasonable amount of time. Despite Northridge's misplaced reliance on *Leon v. Family Fitness Center (#107), Inc.*,[33] we find nothing to support the contention the negligent inspection and maintenance of exercise equipment is an inherent risk of exercising at a health club. Unlike those who run outside on cracked sidewalks speckled with gum, Zipusch and other health club members pay dues in exchange for access to a safe and well-maintained exercise environment. Instead of chilling exercise at a health club, reasonably inspecting and maintaining exercise equipment should have the opposite effect. Further, Northridge acknowledges it already monitors and cleans the exercise facility. Accordingly, we find the negligent inspection and maintenance of exercise equipment is not an inherent risk of exercising at a health club.

---

[30] *Knight v. Jewett, supra,* 3 Cal.4th at page 316.

[31] See *Bjork v. Mason* (2000) 77 Cal.App.4th 544, 553–556 [92 Cal.Rptr.2d 49] (operator and owner of boat owed duty to inspect towrope and inner tube he provided for the plaintiff's use); *Branco v. Kearny Moto Park, Inc.* (1995) 37 Cal.App.4th 184, 190–193 [43 Cal.Rptr.2d 392] (primary assumption of risk did not preclude cause of action premised on increased risk created by utilizing jumps in a motorcycle race posed an extreme risk of injury); *Harrold v. Rolling J Ranch* (1993) 19 Cal.App.4th 578, 587 [23 Cal.Rptr.2d 671] (commercial operator of a horse riding facility has a duty of care not to supply horses which are unduly dangerous).

[32] *Knight v. Jewett, supra,* 3 Cal.4th at pages 318–319.

[33] While the court in *Leon* commented, "malfunctioning exercise or sports equipment" *related* to exercising at a health club, it did not find that it was an *inherent* risk of exercising at a health club. (*Leon v. Family Fitness Center (#107), Inc. supra,* 61 Cal.App.4th at p. 1234.) Further, the comment was made in the context of a release provision exculpating the health club from any claim pertaining to exercising, and thus is particular to the exact language of the release at issue in the case. (See *ibid.*)

#### IV. *ZIPUSCH HAS RAISED A TRIABLE ISSUE OF MATERIAL FACT REGARDING WHETHER LA WORKOUT/NORTHRIDGE NEGLIGENTLY INSPECTED AND MAINTAINED ITS EXERCISE EQUIPMENT.*

Given our interpretation of the release provision as set forth above, we find Northridge did not meet its burden on summary judgment of demonstrating Zipusch's causes of action have no merit. But even if Northridge had met its burden, we find Zipusch has raised a triable issue of material fact which precludes summary judgment.

Circumstantial evidence of a property owner's failure to inspect the premises before an accident is sufficient to infer the risk existed long enough for the property owner, in the exercise of due care, to have discovered and removed it.[34] In other words, a property owner's failure to reasonably inspect can be used to infer constructive knowledge of the dangerous condition, providing a causal link between the accident and the time period between inspections. The determination of what constitutes a reasonable time period between inspections will necessarily vary according to the particular circumstances. For instance, " '[a] person operating a grocery and vegetable store in the exercise of ordinary care must exercise a more vigilant outlook than the operator of some other types of business where the danger of things falling to the floor is not so obvious.' [Citation]."[35] Thus, while a 15- to 30-minute interval between inspections at a busy commercial retail center may lead to an inference of negligence,[36] the same inference might not be found elsewhere.

Zipusch has raised a triable issue of material fact regarding whether LA Workout negligently inspected and maintained its exercise equipment. In her declaration, Zipusch stated, based on her own observations, no staff member inspected or cleaned the exercise equipment in the 85-minute time period prior to the accident. In the health club context where numerous individuals are engaging in vigorous physical activity, a reasonable argument can be made that inspection of the premises is especially important, and an 85-minute time period between inspections is unreasonably long. Further, an LA Workout employee testified the undersides of the treadmill belts are not routinely inspected. From this evidence a reasonable trier of fact could find the health club negligently inspected and maintained its exercise equipment.

For the foregoing reasons, we conclude the trial court erred in granting Northridge's motion for summary judgment.

---

[34] *Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1210–1211 [114 Cal.Rptr.2d 470, 36 P.3d 11].

[35] *Ortega v. Kmart Corp., supra,* 26 Cal.4th at page 1210.

[36] See *Ortega v. Kmart Corp., supra,* 26 Cal.4th at page 1210.

## DISPOSITION

The judgment is reversed and the case is remanded to the trial court for further proceedings. Appellant is entitled to recover her costs on appeal.

Woods, J., and Zelon, J., concurred.