Filed 1/29/15; pub. order 2/19/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TIMOTHY GREBING, | B255866 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. VC062167) |
| v. | |
| 24 HOUR FITNESS USA, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Samantha P. Jessner, Judge. Affirmed.

Wingert Grebing Brubaker & Juskie, Charles R. Grebing, Andrew A. Servais, and Dwayne H. Stein for Plaintiff and Appellant.

Prindle, Amaro, Goetz, Hillyard, Barnes & Reinholtz, Jack C. Nick and Robert R. Willis for Defendant and Respondent.

Plaintiff Timothy Grebing was injured while exercising at defendant 24 Hour Fitness USA, Inc.'s (24 Hour) facility in La Mirada, California. He appeals from the judgment entered after the trial court granted 24 Hour's motion for summary judgment. The court ruled that Grebing had signed a valid release of liability and 24 Hour did not act with gross negligence. In his appeal, Grebing contends: (1) the release cannot relieve 24 Hour of liability for gross negligence, and there is a triable issue of fact whether 24 Hour was grossly negligent; (2) the release does not relieve 24 Hour of liability for its own negligence; and (3) 24 Hour was in the chain of distribution and therefore can be liable based on products liability. We affirm.

*FACTUAL AND PROCEDURAL BACKGROUND*

1.      *Factual Background*

24 Hour operates health clubs under the name 24 Hour Fitness. Grebing became a member of 24 Hour Fitness on November 10, 2011. On this date, he signed a membership agreement which included a provision with the heading "**Release of Liability—Assumption of Risk—Buyer's Right to Cancel—Communications— Agreement Term**." The provision stated (emphasis in original):

"Using the 24 Hour Fitness USA, Inc. (24 Hour) facilities involves the risk of injury to you or your guest, whether you or someone else causes it. Specific risks vary from one activity to another and the risks range from minor injuries to major injuries, such as catastrophic injuries including death. **In consideration of your participation in the activities offered by 24 Hour, <u>you understand and voluntarily accept this risk and agree that 24 Hour,</u> its officers, directors, employees, volunteers, agents and independent contractors <u>will not be liable for any injury</u>, including, without limitation, personal, bodily, or mental injury, economic loss or any damage to you, your spouse, guests, unborn child, or relatives resulting from any negligence of 24 Hour or anyone on 24 Hour's behalf or anyone using the facilities <u>whether related to exercise or not.</u>** You agree to indemnify, defend and hold 24 Hour harmless against any liability, damages, defense costs, including attorney fees, or from any other costs incurred in connection with claims for bodily injury, wrongful death or property

damage caused by your negligence or other wrongful acts or omissions. You further agree to hold harmless, defend and indemnify 24 Hour from all liability, damages, defense costs, including attorney fees, or from any other costs incurred in connection with claims for bodily injury, wrongful death or property damage brought by you, your guests, or minors, even if 24 Hour was negligent. Further, you understand and acknowledge that 24 Hour does not manufacture fitness or other equipment at its facilities, but purchases and/or leases equipment. You understand that 24 Hour is providing recreational services and may not be held liable for defective products. By signing below, you acknowledge and agree that you have read the foregoing and know of the nature of the activities at 24 Hour and you agree to all the terms on pages 1 through 4 of this agreement and acknowledge that you have received a copy of it and the membership policies."

Grebing modified his membership agreement on December 15, 2011, by signing an "Upgrade Agreement" that contained the same provision quoted above.

Grebing was injured on May 9, 2012, while using exercise equipment known as a "low row machine" at 24 Hour's fitness facility in La Mirada. The low row machine is operated by sitting with one's legs extended on pads and lifting weights by pulling a metal handlebar with both hands. A clip or snap hook connects the handlebar to a cable or belt running through pulleys and attached to weights. Grebing performed three sets of exercises on this machine and increased the weight to 220 or 240 pounds for his fourth set. As he was pulling the handlebar during his third or fourth repetition on his fourth set, the clip failed causing the handlebar to break free from the cable and strike him in the forehead. Grebing suffered injuries to his head, back, and neck.

Grebing admitted he had read the following warning label on the machine before he was injured: "**PRIOR TO USE, BE SURE THAT THE 'SAFETY CLIP' IS IN PROPER WORKING CONDITION AND SHOWS NO SIGNS OF WEAR!**" Although the clip that broke on Grebing's low row machine was typically used on crossover machines, there is no specific clip that must be used on the low row machine.

In fact, the clips used on both machines take the same amount of weight. Before the accident, Grebing used the low row machine frequently, or twice every eight days.

24 Hour's facilities technician, Ricardo Alcaraz, ordinarily inspected the exercise equipment daily, including the clips on the machines. Alcaraz was absent from the health club on business on the day of Grebing's accident and did not inspect the equipment that day. However, Alcaraz testified that a service manager would have conducted the inspection on the day of the accident.[1]

In the last five or six years, another 24 Hour health club member, Rene Lozoya, reported various problems with the facility's exercise equipment once or twice per year. For example, Lozoya sometimes reported that the adjustments on bicycles were off or that seats on machines were not repaired for a long time. Prior to Grebing's accident, Lozoya stated that the only problem with clips was that some machines were missing clips. Specifically, Lozoya testified that the problem was not that the clips on the machines were broken, "[t]hey were just missing. People would just steal them from different machines."

On the day of Grebing's accident, Lozoya was exercising near Grebing but using a different type of machine, a pull-down machine. Lozoya noticed that the clip on the pull-down machine used by Lozoya was crooked. Accordingly, Lozoya reported the problem to a health club manager, Walleed Elsherif. However, Lozoya never advised Elsherif that the clip on Grebing's low row machine was the wrong clip, broken, or not working. Within 15 minutes or so after Lozoya's complaint, Grebing was injured while using the low row machine.

2.    *Trial Court Proceedings*

In October 2012, Grebing filed a complaint against 24 Hour asserting causes of action for (1) negligence, (2) negligent products liability, (3) strict products liability,

---

[1]    Although Grebing argues on appeal that there is a disputed question of fact as to whether 24 Hour ever conducted an inspection of the facility on the day of Grebing's accident, he never contradicted Alcaraz's testimony in his opposition papers. Further, Grebing's opposition to 24 Hour's separate statement of undisputed facts notes that its "[d]aily inspections are done for the safety of its members." (Emphasis added.)

and (4) breach of the implied warranty of merchantability. He alleges that 24 Hour negligently maintained and controlled the low row machine and the gym, creating a dangerous condition that resulted in his injury.[2] Grebing also alleges that 24 Hour was in the business of designing, manufacturing, distributing, inspecting, and offering for sale exercise equipment, including the low row machine, and that 24 Hour failed to use reasonable care in these regards.

24 Hour moved for summary judgment or summary adjudication on each cause of action. It argued that the written release was a complete defense to the first, second, and fourth causes of action. 24 Hour also argued that since it was a service provider and not in the chain of distribution, it could not be liable for strict products liability as set forth in the third cause of action. Grebing argued in opposition to the motion that 24 Hour was grossly negligent and that, as a matter of law, the written release could not relieve 24 Hour of liability for gross negligence. He also argued that, as a matter of contract interpretation, the release did not relieve 24 Hour of liability for its own negligence. Further, Grebing argued that 24 Hour was in the chain of distribution and did not merely provide fitness services.

On February 28, 2014, the trial court granted 24 Hour's motion.[3] The court concluded that the written release clearly stated that 24 Hour would not be liable for its own negligence, and there was no evidence of gross negligence. It explained that based "on the very short notice that [24 Hour] had about the problem with the clip coupled with the evidence of the care that [it] took to maintain" the facility, Grebing "failed to submit evidence that demonstrates an extreme departure from the ordinary standard of care or a want of even scant care." In addition, the court noted that Lozoya only recalled reporting one clip issue to management prior to the accident, and that with

---

[2]     Grebing later substituted Body Masters Sports Industries, Inc., the purported manufacturer of the low row machine, for a Doe defendant.

[3]     With one exception, the court overruled all of the parties' evidentiary objections. Because Grebing does not attack the evidentiary rulings on appeal, he has forfeited any contentions of error regarding them. (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1181.)

5

regard to that clip issue, Lozoya only reported that a clip was missing. It entered judgment in favor of 24 Hour on April 1, 2014. Grebing timely appealed the judgment.

## CONTENTIONS

Grebing contends: (1) there is a triable issue of fact whether 24 Hour was grossly negligent, precluding summary adjudication of any cause of action based on the release; (2) the release does not relieve 24 Hour of liability for its own negligence; and (3) 24 Hour was in the chain of distribution and therefore can be liable based on products liability.

## DISCUSSION

1.    *Standard of Review*

A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id.*, subd. (p)(2).) If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact. (*Ibid.*) A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons. (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181.)

2.    *The Release of Liability*

An exculpatory contract releasing a party from liability for future ordinary negligence is valid unless it is prohibited by statute or impairs the public interest.

6

(*Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92, 96, 98.) Releases in the context of recreational sports or exercise facilities generally do not impair the public interest. (*Capri v. L.A. Fitness International, LLC* (2006) 136 Cal.App.4th 1078, 1084.) A valid release precludes liability for risks of injury within the scope of the release. (*Paralift, Inc. v. Superior Court* (1993) 23 Cal.App.4th 748, 757.)

A release of liability for future gross negligence, in contrast, generally is unenforceable as a matter of public policy. (*City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 750-751, 777 (*City of Santa Barbara*).) Ordinary negligence consists of a failure to exercise reasonable care to protect others from harm, while gross negligence consists of "a ' " 'want of even scant care' " ' or ' " 'an extreme departure from the ordinary standard of conduct.' " ' [Citations.]" (*Id.* at p. 754; see *Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 729 ["gross negligence . . . connotes such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results"], disapproved on another point in *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 853, fn. 19.)

Here, the release contained in the two agreements signed by Grebing before his accident relieves 24 Hour of liability for any injury resulting from the negligence of 24 Hour or anyone acting on its behalf. It states (original emphasis), "**24 Hour** . . . **will not be liable for any injury** . . . **resulting from any negligence of 24 Hour or anyone on 24 Hour's behalf** . . . . You understand and acknowledge that 24 Hour is providing recreational services and may not be held liable for defective products." Based on this clear and explicit language, Grebing assumed responsibility for the risks arising from his use of 24 Hour's facilities, services, equipment, or premises.

Grebing's argument that the release did not cover failure to properly assemble or maintain the low row machine does not have merit. The release expressly extends to any injury while using any equipment at a 24 Hour facility. Injury sustained while using the low row machine, whether or not the injury was the result of poor maintenance or improper assembly of the equipment, was a risk reasonably related to the use of the exercise facility and the use of the equipment, so it was encompassed in

the release.  (*Leon v. Family Fitness Center (#107), Inc.* (1998) 61 Cal.App.4th 1227, 1234 [stating that risks of use of a health club typically include, among other things, the risk of injuries due to malfunctioning exercise or sports equipment].)  Further, when a release expressly releases a defendant from any liability, it is not necessary that the plaintiff have specific knowledge of the particular  risk that ultimately caused the injury. (*Paralift, Inc. v. Superior Court, supra,* 23 Cal.App.4th at p. 757 [where a release of all liability for any act of negligence is given, the release applies to any such negligent act, whatever it may have been].)

*Zipusch v. LA Workout, Inc.* (2007) 155 Cal.App.4th 1281, cited by Grebing, is not on point.  In *Zipusch,* the release from liability clause did not explicitly release the defendant from liability for its own negligence.  Instead, the clause only referred to " 'the negligence or other acts of anyone else using LA Workout.' "  (*Id.* at p. 1290.)  In this case, in contrast, the release also relieves 24 Hour of liability for its own negligence.

3.      *Gross Negligence*

Grebing contends that the release does not bar his lawsuit because 24 Hour acted with gross negligence in maintaining the low row machine that caused his injury.  We disagree.

As a preliminary matter, we note that the California Supreme Court emphasized "the importance of maintaining a distinction between ordinary and gross negligence, and of granting summary judgment on the basis of that distinction in appropriate circumstances."  (*City of Santa Barbara, supra,* 41 Cal. 4th at p. 767.)  Here, Elsherif testified that the clip recovered from the low row machine after the accident was the wrong clip for the machine and that the proper clip was a "heavier duty" clip.  He stated that the clip used on Grebing's low row machine on May 9, 2012 should not have been used for pulling weights because the spring-loaded closing mechanism opened out rather than in and could pop open if the clip were positioned incorrectly.  Alcaraz testified that the practice at the facility was not to use the type of clip on the low row machine at the time of the accident, although he stated that the clip was capable of

supporting the same amount of weight as the type of clip that was supposed to be used on the machine. At best, this evidence establishes ordinary negligence by 24 Hour.

Faced with his signed agreements releasing 24 Hour from liability for ordinary negligence, Grebing argues that Lozoya's testimony provided the required showing of " 'the want of even scant care or an extreme departure from the ordinary standard of conduct' " in order to establish gross negligence. (*Decker v. City of Imperial Beach* (1989) 209 Cal.App.3d 349, 358.) He is mistaken. Prior to Grebing's accident, Lozoya stated that the only problem with clips on exercise machines was that some machines were missing clips. Indeed, Lozoya testified that the problem was not that the clips on the machines were broken, "[t]hey were just missing. People would just steal them from different machines." Moreover, on the day of Grebing's accident, Lozoya did not report a specific problem with the clip used on Grebing's low row machine. To the extent that Grebing's claim is that 24 Hour was not timely in inspecting and replacing broken or improper clips on all machines in the facility after receiving Lozoya's complaint, the failure by 24 Hour to respond within 15 minutes of Lozoya's complaint-- the time between the complaint and Grebing's accident--is insufficient to raise a triable issue of gross negligence. (*City of Santa Cruz v. Superior Court* (1988) 198 Cal.App.3d 999, 1007 [allegation that the lifeguard assigned to the area where the injury occurred did not respond and offer aid for 20 minutes is insufficient to raise a triable issue of gross negligence].)

Further, it is undisputed that 24 Hour took several measures to ensure that its exercise equipment and facility were well maintained. For example, it hired a facilities technician whose job was to conduct a daily inspection of the facility and perform preventative maintenance. If the facilities technician was unavailable, 24 Hour had a practice of requiring other staff members to conduct the inspection and perform any required maintenance. In view of these measures, 24 Hour's conduct cannot reasonably be regarded as demonstrating a want of even scant care or an extreme departure from the ordinary standard of conduct. (See *City of Santa Barbara, supra,* 41 Cal.4th at p. 754.) Although Grebing's evidence may raise conflicting inferences regarding the

9

measures' effectiveness, these conflicts did not preclude summary judgment of claims of gross negligence by 24 Hour. (See *Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 53-54 [efforts to mitigate effects of a harm raised no triable issues regarding gross negligence].)

        4.        *Products Liability*

Unlike claims for ordinary negligence, products liability claims cannot be waived. (*Westlye v. Look Sports, Inc.* (1993) 17 Cal.App.4th 1715, 1743.) However, a defendant cannot be liable based on products liability if the dominant purpose of the defendant's transaction with the plaintiff was providing services rather than supplying a product. (*Ontiveros v. 24 Hour Fitness USA, Inc.* (2008) 169 Cal.App.4th 424, 434-435 (*Ontiveros*).) The plaintiff in *Ontiveros* suffered injuries while using an exercise machine at a 24 Hour fitness center. She filed a complaint against 24 Hour including a cause of action for strict products liability. The trial court granted summary judgment for 24 Hour. The Court of Appeal affirmed, concluding that strict products liability was inapplicable because the undisputed evidence showed that the dominant purpose of the plaintiff's membership agreement was the provision of fitness services, and not the provision of a product. (*Id.* at pp. 434-435.)

Like in *Ontiveros*, 24 Hour's evidence in support of its motion for summary judgment in this case established that it did not manufacture the exercise machine on which Grebing was injured, and that it purchased or leased exercise equipment for use by its members. In addition, 24 Hour showed that its fitness centers provided exercise machines, free weights, group exercise classes, personal training (for an additional fee), and locker room facilities. 24 Hour fitness centers also offered basketball courts, indoor and outdoor volleyball courts, racquetball and squash courts, swimming pools, steam rooms, saunas, whirlpools, tanning facilities, day spas, pro shops, juice bars, and restaurants. In fact, Grebing's membership agreement allowed him to visit a variety of 24 Hour fitness clubs. Because the undisputed evidence showed that 24 Hour made the low row machine and other exercise equipment available for use by its members and provided a variety of other fitness services, the dominant purpose of 24 Hour's

10

membership agreement with Grebing was providing fitness services rather than supplying a product. As such, it cannot be liable based on a claim for products liability.

5. *Breach of Warranty*

Finally, Grebing argues that the court improperly adjudicated his breach of warranty claim. In support of this contention, he states that a release cannot relieve a party of implied warranty liability for injury or loss resulting from that party's gross negligence. Since there is no disputed issue of material fact concerning gross negligence, the release also bars Grebing's cause of action for breach of warranty.

### DISPOSITION

The release in the two agreements signed by Grebing precludes liability for ordinary negligence and breach of warranty. Because we find no disputed issues of material fact over whether 24 Hour acted with gross negligence or provided fitness services to Grebing, the trial court properly granted 24 Hour's motion for summary judgment. The judgment is affirmed. 24 Hour shall recover its costs on appeal.

LAVIN, J.[*]

WE CONCUR:

KITCHING, Acting P. J.                    ALDRICH, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 2/19/15

*CERTIFIED FOR PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TIMOTHY GREBING, | TIMOTHY GREBING, |
| Plaintiff and Appellant, | Plaintiff and Appellant, |
| v. | v. |
| 24 HOUR FITNESS USA, INC., | 24 HOUR FITNESS USA, INC., |
| Defendant and Respondent. | Defendant and Respondent. |

THE COURT:

The opinion in the above-entitled matter filed on January 29, 2015, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

[There is no change in the judgment.]