Filed 6/14/22 Certified for Publication 7/1/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MANSI JOSHI, | H048115 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. CV337351) |
| v. | |
| FITNESS INTERNATIONAL, LLC, | |
| Defendant and Respondent. | |

On May 1, 2017, Mansi Joshi was injured while using a locker room sauna at City Sports Club, a San Jose exercise facility (the Club) of which she was a member. The Club is owned by Fitness International, LLC (Fitness). Joshi filed a personal injury suit alleging a claim for premises liability based upon Fitness's failure to maintain the sauna in a safe condition. In her form complaint, she alleged that Fitness was negligent and that it failed to guard against or warn against a dangerous condition of the premises. The specific facility condition she alleged was that an interior light was burned out, and that when she entered the sauna and closed the door, she tripped and fell because the area was dark, resulting in her right arm being severely burned after making contact with the sauna heating element.

Fitness filed a motion for summary judgment, asserting that any claim for ordinary negligence was barred by a release of liability signed by Joshi in connection with her

membership. Fitness claimed further that Joshi could not establish a claim for gross negligence, and she could not establish a claim for premises liability because Fitness had no actual or constructive knowledge of a dangerous condition at the Club. The trial court granted the motion, and judgment was entered in favor of Fitness on February 26, 2020.

Joshi argues on appeal that there was a triable issue of material fact to support a claim for gross negligence against Fitness. She contends further that there was evidence presented below that Fitness had actual or constructive knowledge of the existence of a dangerous condition—the burned out light bulb inside the sauna—at the time of the incident and it failed to take corrective action to eliminate the danger.

We conclude that in its motion for summary judgment, Fitness negated (1) a claim for ordinary negligence alleged in the complaint because Joshi signed a membership agreement containing a release of claims for injuries arising from accidents at the Club; (2) a claim for gross negligence; and (3) a claim for premises liability based upon evidence that it had no actual or constructive knowledge at the time of the incident that the sauna light bulb was burned out. We conclude further that Joshi did not present evidence that raised a triable issue of material fact in support of her claims. Accordingly, the trial court did not err in granting Fitness's motion for summary judgment, and we will affirm the judgment entered on that order.

## I.   PROCEDURAL AND FACTUAL BACKGROUND

### A.   Complaint

On October 30, 2018, Joshi filed a Judicial Council form complaint for personal injuries against Fitness alleging one cause of action for premises liability.[1] She alleged that on May 1, 2017, as she entered the sauna at the Club owned by Fitness on Newhall

---

[1] Joshi filed her complaint against City Sports Club, alleging that it was a business organization which form was unknown. Fitness appeared, and it indicated in its motion for summary judgment that it was a limited liability company doing business as City Sports Club that owned the Club. Joshi did not dispute that assertion.

2

Drive in San Jose, she tripped and fell onto the heating element, suffering burns to her body. Joshi alleged that the accident occurred because of a lack of lighting caused by a burned out light bulb. She alleged two counts: that Fitness (1) was negligent in owning, maintaining, managing, and operating the premises; and (2) willfully failed to guard against or warn against a dangerous condition of the premises.

Fitness filed an answer to the complaint. In its answer, Fitness alleged, inter alia, as a defense that Joshi signed a membership agreement that included an express release of liability under which she knowingly waived any claims she might have against Fitness. (See *Baker v. Ferrel* (1947) 78 Cal.App.2d 578, 579 ["a release is an affirmative defense which must be specially pleaded"].)

### B. Summary Judgment

#### 1. Motion

In November 2019, Fitness moved for summary judgment. Fitness argued that (1) the waiver and release of liability Joshi signed in connection with her membership agreement was a complete defense against her claim of negligence; (2) the "extensive maintenance protocol" utilized by Fitness for the Club precluded a finding of gross negligence; and (3) there was no evidence that Fitness had either actual or constructive notice of a dangerous condition of the Club, and thus any premises liability claim was without merit. The essential evidence submitted by Fitness in support of its motion follows.

Joshi signed a membership agreement with Fitness on September 14, 2016. She was a member of the Club on May 1, 2017. The membership agreement signed by Joshi included a provision (hereafter, the Release) that read, in relevant part, as follows: "IMPORTANT: RELEASE AND WAIVER OF LIABILITY AND INDEMNITY. You hereby acknowledge and agree that use by Member . . . of the facilities, services, equipment or premises offered by CSC . . . involves risks of injury to persons and property. *Member understands, voluntarily accepts and assumes full responsibility for*

3

*such risks, which include* (but are not limited to) injuries arising from use of exercise equipment and machines; injuries arising from participation in supervised or unsupervised activities or programs; injuries and medical disorders arising from exercising such as heart attacks, strokes, heat stress, sprains, broken bones, and to muscles and ligaments, among others; *accidental injuries occurring in dressing rooms, showers and other facilities*; and injuries so severe they result in permanent disability, head injury, paralysis, and even death.  Further, in consideration of Member . . . being permitted to enter any facility of CSC . . . *Member agrees that CSC will not be liable for any injury to the person or property of Member . . . , and Member hereby releases and holds harmless CSC from all liability to Member . . ., for any loss or damage*, and forever gives up any claim or demands therefore, on account of injury to Member's person or property, including injury leading to the death, whether caused by the active or passive negligence of CSC or otherwise, and whether related to exercise or not, to the fullest extent permitted by law, while Member . . . [is] in, on, or about Club premises or using any CSC facilities, services or equipment."  (Italics added.)

On May 1, 2017, at approximately 7:00 p.m., Joshi checked into the Club, and after her workout, entered the sauna in the women's locker room.  She stated in her deposition that she entered the sauna after seeing an indicator outside that the sauna was functional.  She saw two people sitting in the sauna and the door closed behind her.  There was a single light fixture in the sauna; Joshi realized the interior light was off when the door closed behind her and it became completely dark.  After entering the sauna, as she attempted to seat herself on the upper level, she fell on her right side onto the heating unit.  Joshi testified that she fell because it was pitch black inside the sauna.

After the incident, Joshi spoke with the manager.  She told him the light was out in the sauna, there was no warning sign, and that he "should close down the sauna because it's hurting people."  The manager responded he was unaware of this condition.  She testified that she did not know how long before the incident that the light bulb for the

4

sauna had been out, and she had no information that Fitness was aware of a light bulb being burned out prior to the incident.

The district operations manager for Fitness, Dustin Realini, declared that the Club's operations manager performed detailed weekly inspections of the Club and documented any conditions that needed attention, including cleaning and maintenance issues. Club employees also performed daily walk-through inspections of the Club, including the women's sauna, to determine whether there were any conditions that needed attention. The Club cleaned the women's sauna twice per day. Fitness did not have notice that the light bulb for the women's sauna was burned out at the time of the incident.

### 2. *Opposition*

Joshi opposed the motion. She argued, inter alia, that there were triable issues of material fact as to whether (1) Fitness had actual notice of a dangerous condition in the women's sauna prior to the incident; (2) Fitness conducted reasonable inspections of the Club; (3) the Release was enforceable (Joshi asserted it was not), because it did not identify the specific act of using a sauna as a matter subject to being released; (4) assuming that use of a sauna constitutes a recreational activity, Fitness increased the risks associated with its use; and (5) Fitness's conduct constituted gross negligence. The essential evidence submitted by Joshi in opposition to the motion follows.

Joshi did not dispute that she signed the membership agreement and that she had the opportunity to review its terms before signing it. She admitted the agreement included the Release terms. And Joshi agreed that she was a member of the Club on May 1, 2017.

Joshi testified in her deposition that after exercising on May 1, 2017, she went to use the sauna in the women's locker room at approximately 7:30 p.m. As she approached, Joshi noticed that the panel next to the entrance had an illuminated light that indicated to her the sauna was operational. There were two women seated inside the

5

sauna near the entrance. Joshi stated that after entering the sauna to the left where there were open seats, "[t]he sauna door closed and the sauna was dark. The light bulb inside the sauna was not properly functioning." As she attempted to situate herself on the upper sauna bench, she fell because the sauna was dark. Her arm contacted the furnace, and she was severely burned.

Joshi submitted the declaration of Kurt Baker, whom Joshi's counsel described as a "[f]itness [f]acility [e]xpert." Baker disputed Realini's statements that the Club's had (1) " 'detailed weekly inspections' " by the operations manager resulting in the documentation of conditions requiring attention, (2) daily walk-through inspections performed by operations employees, and (3) the sauna was cleaned twice daily by janitorial employees. Baker declared that the Club did not maintain daily inspection sheets, sweep sheets or other evidence of daily inspections or twice-daily cleaning evidencing the statements made by Realini in his declaration. Baker stated that Fitness's records showed that, in the months before the incident, the weekly walk-throughs of the facility occurred on Mondays. (May 1, 2017 was a Monday.) In challenging Fitness's claim that it had no notice that the light bulb in the women's sauna was not operational at the time of the incident, Baker declared that there was a checklist from the weekly walk-through of the Club on May 1, 2017, that indicated the women's sauna " 'needs repair.' " After the incident on the evening of May 1 and up to at least noon on May 2, 2017, the Club had neither replaced the light bulb nor closed the women's sauna for members' use.

In an instance four months earlier, Baker declared that it had been reported in a January 11, 2017 work order that the sauna light for the women's sauna was out; the sauna was not placed out of service and the light was not replaced until January 17, 2017. Eight months before the incident, a work order dated September 19, 2016, at 5:16 p.m. indicated that a light was out in the women's sauna; records showed the work was completed the same day at 5:17 p.m.

6

Baker stated that fitness facilities are comprised of several different areas, and inspection protocol and risk prevention and maintenance must be individually tailored to the specific area involved. Baker expressed the opinion that a sauna is considered a " 'high risk' " portion of a fitness facility, and the operator should take every precaution to protect its users. Baker opined that the Club, based upon its own procedures and practices as well as industry custom, did not appreciate the inherent increased risk to members created by a sauna; did not emphasize frequent inspections and maintenance of the sauna; and did not follow its policy of timely replacing the light bulb after the incident or conduct an immediate investigation of the incident that resulted in injury.

### 3. Order

The court, after issuing a tentative ruling in Fitness's favor, heard argument on the motion for summary judgment on January 23, 2020. The court adopted its tentative ruling, and that ruling became the order of the court (hereafter, the Order).

In its Order, the trial court held that the Release contained in the membership agreement "clearly covers [Joshi's] fall in the sauna, an 'accidental [injury] occurring in dressing rooms, showers and other facilities,' and provides [Fitness] a complete defense to [Joshi's] claim. The conduct described in the Complaint—[i.e.], the alleged failure to timely notice and replace a burned out light bulb in the sauna—cannot be reasonably construed as 'gross negligence' that would not be barred by the release provision of the membership agreement." It held that Fitness, by presenting evidence that it had regular inspection and cleaning schedules for the facility, met its burden of showing that it had not acted " 'with a want of even scant care' " to warrant a finding of gross negligence. The court found that Joshi had not raised any triable issue of material fact that Fitness's conduct constituted gross negligence.

The trial court also concluded—addressing the separate ground for summary judgment urged in the motion concerning premises liability—that Fitness had met its burden of establishing that "it had no actual or constructive knowledge of the burned out

7

light bulb in the sauna on the day in question before [Joshi's] injury occurred." And the court found that Joshi had not presented evidence of such actual or constructive knowledge, reasoning that her "arguments on constructive knowledge, including the declaration of Mr. Baker, are based on speculation and conjecture that cannot give rise to a triable issue of material fact."

Judgment in favor of Fitness was entered on February 26, 2020. Joshi filed a timely appeal.

## II.    DISCUSSION

### A.    Summary Judgment and Standard of Review

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) As such, the summary judgment statute, Code of Civil Procedure section 437c, "provides a particularly suitable means to test the sufficiency of the plaintiff's prima facie case and/or of the defendant's [defense]." (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 203.)[2]

The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he [or she] is entitled to judgment as a matter of law." (*Aguilar*, *supra*, 25 Cal.4th at p. 850, fn. omitted.) A defendant moving for summary judgment must " 'show[ ] that one or more elements of the cause of action . . . cannot be established' by the plaintiff." (*Id.* at p. 853, quoting § 437c, subd. (o)(2).) A defendant meets its burden by presenting affirmative evidence that negates an essential element of the plaintiff's claim. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) Alternatively, a defendant meets its burden by submitting evidence "that the plaintiff does not possess, and cannot reasonably obtain, needed evidence" supporting an essential

_____

[2] All unspecified statutory references are to the Code of Civil Procedure.

element of its claim. (*Aguilar*, at p. 855.) "Once the defendant meets the foregoing burden, 'the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action . . . [and] set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' [Citation.]" (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 780 (*Saelzler*), quoting § 437c, subd. (o)(2).)

"In ruling on the motion, the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation]." (*Aguilar*, *supra*, 25 Cal.4th at p. 843.) In considering the parties' evidence in connection with a motion for summary judgment, the court "strictly scrutinize[s]" the declarations submitted by the moving party and "liberally constru[es]" those offered by the opposing party, and it "resolv[es]" any evidentiary doubts or ambiguities in [the opposing party's] favor." (*Saelzler*, *supra*, 25 Cal.4th at p. 768.) The opposing party may rely upon inferences, but "those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork. [Citation.]" (*Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 161.) And inferences properly derived from the parties' evidence are viewed "in the light most favorable to the opposing party." (*Aguilar*, *supra*, at p. 843.)

Since summary judgment motions involve pure questions of law, we review independently the granting of summary judgment to ascertain whether there is a triable issue of material fact justifying the reinstatement of the action. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.) In doing so, we "consider[] all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) We need not defer to the trial court and are not bound by the reasons in its summary judgment

9

ruling; we review the ruling of the trial court, not its rationale.  (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.)

### B.       Release of Future Negligence Claims

Generally, all persons are legally responsible "for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property." (Civ. Code, § 1714, subd. (a).)  However, "[a]n exculpatory contract releasing a party from liability for future ordinary negligence is valid unless it is prohibited by statute or impairs the public interest.  [Citation.]" (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 637 (*Grebing*), citing *Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92, 96, 98.)  Such releases arising out of exercise facilities or recreational sports have generally been held to not impair the public interest.  (*Capri v. L.A. Fitness International, LLC* (2006) 136 Cal.App.4th 1078, 1084 (*Capri*).)[3]

The same is not true insofar as a release in the context of recreational facilities or programs purports to insulate the service provider or program from liability for gross negligence.  In *City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747 (*Santa Barbara*), the California Supreme Court considered whether a release in favor of a city sponsoring a summer camp for developmentally disabled children was effective to release future liability for acts of gross negligence.  In *Santa Barbara*, the mother of a girl with developmental disabilities had signed a release included in an application form for enrollment in summer camp.  (*Id.* at p. 750.)  The child drowned while attending the camp, and her parents filed a wrongful death action against the city and the child's

---

[3] Indeed, as relevant to the case before us, a number of appellate decisions have upheld the validity of releases of future liability for ordinary negligence in the context of fitness facilities.  (See, e.g., *Anderson v. Fitness International, LLC* (2016) 4 Cal.App.5th 867, 877 (*Anderson*); *Grebing*, *supra*, 234 Cal.App.4th at p. 637; *Capri*, *supra*, 136 Cal.App.4th at p. 1084; *Benedek v. PLC Santa Monica, LLC* (2002) 104 Cal.App.4th 1351, 1361 (*Benedek*); *Sanchez v. Bally's Total Fitness Corp.* (1998) 68 Cal.App.4th 62, 68-69.)

10

counselor alleging a claim for negligence.  The defendants, who argued the release offered a complete defense, unsuccessfully moved for summary judgment.  (*Id.* at p. 753.)  The Court of Appeal denied the defendants' petition for writ of mandate, concluding that, although the release precluded liability for ordinary negligence, it did not preclude liability for future gross negligence. (*Ibid.*)

On review, the Supreme Court affirmed.  It acknowledged that an agreement provided by a participant in recreational programs and services that releases liability for future negligence is enforceable.  (*Santa Barbara*, *supra*, 41 Cal.4th at pp. 750-751.)  It agreed, however, with the appellate court's conclusion that "to the extent [the release agreement] purports to release liability for future gross negligence, [it] violates public policy and is unenforceable." (*Id.* at p. 751.)  The high court reasoned:  "[T]he distinction between 'ordinary and gross negligence' reflects 'a rule of policy' that harsher legal consequences should flow when negligence is aggravated instead of merely ordinary." (*Santa Barbara*, *supra*, at p. 776.)

" 'Gross negligence' long has been defined in California and other jurisdictions as either a ' " 'want of even scant care' or 'an extreme departure from the ordinary standard of conduct.' " ' [Citations.]" (*Santa Barbara*, *supra*, 41 Cal.4th at p. 754; see also *Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1185-1186 (*Eastburn*); CACI No. 425.)  Gross negligence is a subspecies of negligence; it is not a separate tort.  As the Supreme Court held, its conclusion that an agreement purporting to release a claim for future gross negligence was expressly not a recognition of "a cause of action for gross negligence." (*Id.* at pp. 779-780, fn. omitted; see also *id.* at p. 781, fn. omitted ["a theory of gross negligence, if supported by evidence, showing the existence of a triable issue, is the *only* negligence-based theory that is potentially open to plaintiffs"].)  Whether a lack of due care constitutes gross negligence is generally a question of fact.  (*Decker v. City of Imperial Beach* (1989) 209 Cal.App.3d 349, 358

11

(*Decker*).)  But this is "not always" the case.  (*Ibid*.; see also *Anderson*, *supra*, 4 Cal.App.5th at p. 882.)

### C.    Summary Judgment Was Properly Granted

Joshi argues that the trial court erred in granting summary judgment.  She contends that whether a defendant's conduct constitutes gross negligence is generally a question of fact and is thus not subject to summary judgment.  Joshi asserts that there was evidence presented that raised a triable issue of fact that Fitness was grossly negligent; she cites evidence that on "*the morning of* Joshi's accident" (May 1, 2017; italics added), a Club employee performed a walk-through and noted on a checklist that the sauna in the women's locker room " 'need[ed] repair.' "  Joshi argues that a reasonable inference to be drawn from this evidence is that the Club determined *on the morning* of May 1, 2017, that the lightbulb in the women's sauna " 'need[ed] repair.' " (Italics added.)[4]  In view of Baker's expert testimony that " 'a sauna is considered a "high risk" area to have in a fitness facility,' " Joshi argues, the Club's failure to replace the light bulb during the day or to take other corrective action (e.g., closing down the sauna) created a triable issue of material fact as to the Club's gross negligence.  Further, Joshi contends that the trial court erred in rejecting her theory of premises liability, because she raised a triable issue of fact that the Club had *actual knowledge* of the dangerous condition (i.e., the burned out light bulb) before the incident involving Joshi at approximately 7:30 that evening.

#### 1.    *Release Barred Ordinary Negligence Claim*

"An exculpatory contract releasing a party from liability for future ordinary negligence is valid unless it is prohibited by statute or impairs the public interest. [Citation.]"  (*Grebing*, *supra*, 234 Cal.App.4th at p. 637.)  Numerous cases have upheld

---

[4] As we discuss, *post*, evidence of the timing of this walk-through is a critical aspect of this case, and there is nothing in the record before us as to *when* on May 1, 2017, the walk-through occurred.

the validity of such agreements waiving ordinary negligence claims in the context of the use of gymnasiums and fitness facilities. (*Santa Barbara*, *supra*, 41 Cal.4th at p. 759 & fn. 12 [citing cases].) The Release here is clearly the type of exculpatory contract permitted under the law.

Where the defendant moves for summary judgment, it has the burden of establishing that the release is valid "as applied to the case at hand." (*Santa Barbara*, *supra*, 41 Cal.4th at p. 780, fn. 58.) Fitness in its motion presented evidence concerning Joshi's execution of the Release as part of the membership agreement. In opposition to the motion, Joshi argued that, although she had signed the membership agreement, because the Release did not specifically identify the risk involved, i.e., the use of a sauna, it did not bar her claim against Fitness for ordinary negligence. The court below found that the Release "clearly cover[ed Joshi's] fall in the sauna, an 'accidental [injury] occurring in dressing rooms, showers and other facilities.' " (See, e.g., *Grebing*, *supra*, 234 Cal.App.4th at p. 638 [rejecting claim that release did not apply to use of specific exercise equipment, a low rowing machine, where "release expressly extends to any injury while using any equipment at" the facility].)

On appeal, Joshi argues at length that the trial court erred by granting summary judgment, asserting that there were triable issues of fact as to whether Fitness's conduct constituted gross negligence. She concedes that the Release barred her claim for ordinary negligence. Therefore, to the extent that Joshi has failed to renew her argument made below that the Release did not bar her claim for negligence, it is abandoned. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [appellate court treats as abandoned arguments made at trial level that are not asserted on appeal]; see also *Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 175, fn. 2 [theories

13

advanced in opposition to summary judgment at trial level not raised on appeal deemed abandoned].)**5**

The trial court in any event correctly held that under the terms of the Release, Joshi's claim for ordinary negligence arising from her trip-and-fall accident in the sauna was barred. In the membership agreement signed by Joshi, she accepted and assumed responsibility for risks that included, inter alia, "*accidental injuries occurring in dressing rooms, showers and other facilities*." (Italics added.) She agreed that Fitness would not be liable for such injuries, and she "*release*[*d*] *and* [*held*] *harmless CSC from all liability to* [*her*] . . . , *for any loss or damage*, and forever [gave] up any claim or demands . . . whether caused by the active or passive negligence of CSC or otherwise, and whether related to exercise or not, while [she] . . . [was] *in, on, or about Club premises or using any CSC facilities, services or equipment*." (Italics added.) This language, insofar as it contemplated a release of all claims for "accidental injuries occurring in dressing rooms, showers and other facilities," was sufficiently broad to include injuries resulting from tripping and falling while using the women's sauna. (Cf. *Leon v. Family Fitness Center (#107), Inc.* (1998) 61 Cal.App.4th 1127, 1234 (*Leon*) [stating that slipping in locker room shower is a known hazard relating to use of a health club facility].)**6**

---

**5** We address below Joshi's argument that the Release did not bar her premises liability claim. (See pt. II.C.3., *post*.)

**6** *Anderson*, *supra*, 4 Cal.App.5th 867 involved a member's claim for negligence arising out of slipping and falling in a health club facility in which there was a broad release in the membership agreement similar to the one here. (See *id.* at pp. 872-873 [member's acknowledgment of assuming risks of injury related to use of " 'facilities, services, equipment or premises,' " and agreement to release any claims for negligence " 'while Member . . . [is] in, upon, or about L.A. Fitness premises or using any L.A. Fitness facilities, services or equipment' "].) The plaintiff there conceded that the release language barred his claim for ordinary negligence. (*Id.* at p. 871.)

14

### 2. *No Triable Issue of Fact Concerning Gross Negligence*

Notwithstanding the Release's effectiveness in waiving Joshi's claim for negligence against Fitness, "to the extent it purports to release liability for future gross negligence, it violates public policy and is unenforceable." (*Santa Barbara*, *supra*, 41 Cal.4th at p. 751.) In contrast to ordinary negligence—which involves a breach of the duty of exercising reasonable care to protect others from harm (*Grebing*, *supra*, 234 Cal.App.4th at p. 637)—" '[g]ross negligence' long has been defined . . . as either a ' " 'want of even scant care' " ' or ' " 'an extreme departure from the ordinary standard of conduct.' " ' [Citations.]" (*Santa Barbara*, *supra*, at p. 754.) As one court has explained, "[I]n cases involving a waiver of liability for future negligence, courts have held that conduct that substantially or unreasonably increased the inherent risk of an activity or actively concealed a known risk could amount to gross negligence, which would not be barred by a release agreement. [Citation.] Evidence of conduct that evinces an extreme departure from manufacturer's safety directions or an industry standard also could demonstrate gross negligence. [Citation.] Conversely, conduct demonstrating the failure to guard against, or warn of, a dangerous condition typically does not rise to the level of gross negligence. [Citation.]" (*Anderson*, *supra*, 4 Cal.App.5th at p. 881.)

As noted, although the existence of gross negligence is a matter generally for the trier of fact (*Decker*, *supra*, 209 Cal.App.3d at p. 358), it may be determined as a matter of law on summary judgment in an appropriate case. (*Jimenez v. 24 Hour Fitness USA, Inc.* (2015) 237 Cal.App.4th 546, 557; see *Grebing*, *supra*, 234 Cal.App.4th at p. 639 [affirming trial court's granting of summary judgment where it found no triable issue of fact as to existence of gross negligence].)

In the context of a motion for summary judgment, where "a complaint alleges facts demonstrating gross negligence in anticipation of a release, the initial burden remains on the moving defendant asserting the release as a defense to produce evidence

refuting the allegations constituting gross negligence. [Citations.]" (*Anderson*, *supra*, 4 Cal.App.5th at p. 880; see *Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 856 [where plaintiff's complaint alleging that defendant increased inherent risk of horse jumping and concealed horse's unfitness that "could . . . equate to gross negligence," defendant had burden of production in moving for summary judgment to negate the factual allegations].), But when the plaintiff fails to allege in his or her pleading facts sufficient to support a theory of gross negligence, the defendant satisfies its burden by asserting a release as a complete defense, and the burden then shifts to the plaintiff to produce evidence that there is a triable issue of fact supporting gross negligence to defeat summary judgment. (*Anderson*, *supra*, at pp. 881-882.)

Here, Joshi alleged in her form complaint that on May 1, 2017, she entered the women's sauna at the Club, tripped and fell due to the light bulb being burned out, landed on the heating element, and was injured. There were no factual allegations in the complaint supporting gross negligence.[7] Accordingly, since Fitness, as moving defendant, satisfied his burden of establishing the Release as a complete defense to a claim for ordinary negligence, the burden shifted to Joshi to present evidence of a triable issue of fact to support a finding of gross negligence against Fitness. (*Anderson*, *supra*, 4 Cal.App.5th at pp. 881-882.) As we discuss (beginning two paragraphs below), Joshi did not satisfy that burden.

Even assuming that Fitness, in moving for summary judgment, was required as its initial burden to negate gross negligence, the record shows that it satisfied its obligation. Fitness, based upon the declaration of its district operations manager, Realini, did not

---

[7] The only allegation relating to gross negligence is the box for "**Count Two—Willful Failure to Warn**," in which the preprinted allegation (followed by the identification of the Club) is that "[t]he defendant owners who willfully or maliciously failed to guard against a dangerous condition, use, structure, or activity were (*names*): City Sports Club" This allegation was insufficient in presenting facts sufficient to support a claim for gross negligence.

16

have notice that the light bulb for the women's sauna was burned out at the time of the incident.  Further, there was evidence presented by Fitness that the Club's operations manager performed detailed weekly inspections of the Club and documented any maintenance issues needing attention.  It also presented evidence that Club employees performed daily walk-through inspections, including the women's sauna, to determine whether there were any conditions requiring attention.  This evidence constituted a prima facie showing negating Joshi's assertion that the actions of Fitness showed " ' " 'a want of even scant care,' " ' " or " ' "an extreme departure from the ordinary standard of conduct.' " ' " (*Santa Barbara*, *supra*, 41 Cal.4th at p. 754; see also *Grebing*, *supra*, 234 Cal.App.4th at p. 639 [efforts by fitness facility to ensure equipment was in good order, including daily inspections and preventative maintenance, negated claim that its conduct "demonstrate[d] a want of even scant care or an extreme departure from the ordinary standard of conduct"].)

The principal evidence concerning gross negligence that Joshi presented below concerned a May 1, 2017 checklist from a walk-through of the facility in which there was a notation that the women's sauna " 'need[ed] repair.' "  (Hereafter, that walk-through is referred to as the May 1 inspection, and the checklist generated from that inspection is referred to as the May 1 checklist.)  In her appellate briefs, Joshi emphasizes that a reasonable inference from this evidence is that the employee discovered in the May 1 walk-through that the sauna light bulb was burned out, and that this was the item that " 'need[ed] repair.' "  Thus, Joshi argues, "[Fitness] knew about the lightbulb and failed to replace it—. . . [and these facts] should have defeated summary judgment."  For the reasons discussed below, the May 1 checklist was not evidence that raised a triable issue of material fact concerning gross negligence.

First, we address the nature of the evidence presented concerning the May 1 checklist and a challenge to its admissibility.  The sole evidence of the May 1 checklist advanced by Joshi in opposition to the motion was the statement made by her expert,

17

Baker, that "[t]he checklist from the Monday 'walk-thru' on May 1, 2017 noted that the sauna in the Women's Locker Room 'needs repair.' " Joshi did not present in her opposition a copy of the May 1 checklist itself.[8]

On appeal, Fitness contends that the reference to the May 1 checklist in Baker's declaration constituted improper hearsay. Joshi on appeal contends that the evidence was admissible under exceptions to the hearsay rule, including, inter alia, as a party admission (Evid. Code, § 1220), as an admission against a party to litigation by a person on whose breach of duty that party's liability may depend (*id.*, § 1224), and as a contemporaneous statement of the declarant (*id.*, § 1241). Although Fitness filed evidentiary objections below to the Baker declaration, it did not object that Baker's statement about the May 1 checklist derived from the May 1 inspection of the facility was inadmissible hearsay. Accordingly, Fitness waived that objection and we will not consider it here. (See § 437c, subd. (b)(5) ["[e]videntiary objections not made at the hearing shall be deemed waived"; *id.*, subd. (d) [an objection to statutory requirement that declaration set forth admissible evidence, "if not made at the hearing, shall be deemed waived"]; see also *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 452, fn. 3 [in reviewing evidence before trial court on motion for summary judgment, "[d]efendant's failure to object to the deposition testimony bars any hearsay objection on appeal"].)[9]

---

[8] At oral argument on the motion, the trial court asked Joshi's counsel why she had not submitted the May 1 checklist itself as part of her opposition to the motion. Counsel responded that the document had a confidentiality designation that would have required that it be filed under seal, the protective order required 15 days' advance notice to opposing counsel, and Joshi's counsel, "due to time constraints," was unable to file the document with the court.

[9] The trial court noted in its order that, although both parties had filed written objections to evidence, because neither party had complied with California Rule of Court, rule 3.1354, it declined to rule on the objections. On appeal, neither party challenges that ruling.

18

Second, we address *the actual evidence* that was presented concerning the May 1 inspection that yielded the May 1 checklist, as opposed to what Joshi, on appeal, *claims it to have been*. Joshi, on multiple occasions in her appellate briefs, asserts that the May 1 inspection that is critical to her claim that Fitness knew about the burned out light bulb before the accident at 7:30 p.m. *occurred in the morning*. We have searched the record carefully for evidence supporting this assertion. There is nothing in the record indicating the time of day of the May 1 inspection. It could have been any time on the day of May 1; it could have been before, or it could have been after the incident in which Joshi was injured. Even assuming the May 1 inspection occurred before the incident, there is no indication whether the matter in the women's sauna " 'need[ing] repair' " was observed and noted on the May 1 checklist within a sufficient amount of time before the incident for Fitness to have been able to address it.[10]

Third, Baker stated in his declaration that "[i]t [was] probable that this [May 1] inspection was conducted during normal business hours and prior to [Joshi's] incident which occurred around 7:30 p.m." This statement constitutes speculation and is not founded upon anything in the record. (See *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770 [" 'an expert opinion based on speculation or conjecture is inadmissible' "].) Baker's declaration therefore cannot be relied upon to support Joshi's contention that there was evidence that Fitness was aware of *something* in the women's sauna that " 'need[ed] repair' "—with the inference being that it was a burned out light bulb—prior to the incident involving Joshi at approximately 7:30 that evening.[11] In short, Joshi's evidence concerning the May 1 inspection that

---

[10] During oral argument, this court questioned Joshi's counsel as to whether there was evidence in the appellate record showing that the May 1 inspection occurred in the morning, as claimed in the appellate briefs. Counsel was unable to provide a citation to the record of such evidence.

[11] Below, Fitness objected to the statement in Baker's declaration on the grounds that it "[l]ack[ed] foundation" and was "[p]ure speculation." Since the trial court

yielded the May 1 checklist did not raise a triable issue of fact to support a claim for gross negligence.

Other evidence presented by Joshi does not assist her position. Joshi pointed to work orders from January 2017 that she claimed indicated that Fitness waited six days to change a light bulb in the women's sauna. Assuming one accepts Joshi's interpretation of the evidence,[12] this evidence was not relevant to the question of whether Fitness was grossly negligent in failing to replace a light bulb in the women's sauna four months later on May 1. As noted, there was no evidence presented that Fitness was aware that a light bulb was burned out before the incident at 7:30 p.m. Joshi also presented a work order dated September 19, 2016, at 5:16 p.m. indicating that a light was out in the women's sauna; records showed the work was completed the same day at 5:17 p.m. Again, the fact that Fitness may have responded very promptly to replace a burned out light bulb eight months before the incident has no relevance here, since there was no evidence as to how long before the accident on May 1 Fitness learned that a light bulb was burned out in the women's sauna—or if, in fact, Fitness learned about it at all before Joshi was injured.

There was no evidence presented showing that Fitness's conduct constituted "either a ' " 'want of even scant care' " ' or ' " 'an extreme departure from the ordinary standard of conduct.' " ' [Citations.]" (*Santa Barbara*, *supra*, 41 Cal.4th at p. 754.) There was simply no evidence offered by Joshi below that "point[ed] to such extreme conduct." (*Eastburn*, *supra*, 31 Cal.4th at p. 1186.) Accordingly, the trial court properly concluded that there was no triable issue of material fact in support of Joshi's claim of gross negligence.

declined to consider Fitness's objections, it is appropriate that we consider them here. (See § 437c, subd. (q).)

[12] The January 11, 2017 work order identified the problem as being a "[t]imer." with a note indicating that "women['s] sauna light out." It is not clear whether this was the same type of burned out light bulb issue that was the basis for Joshi's claim from her accident on May 1, 2017.

### 3.　No Triable Issue as to Premises Liability Claim

Joshi argues on appeal that there was "a triable issue[] of material fact regarding whether the 'defective condition' [i.e., the burned out light bulb in the women's sauna,] existed long enough so that it would have been 'discovered by an owner who exercised reasonable care.' " In support of her claim of premises liability, Joshi argues that the trial court, in holding that there was no triable issue of fact that Fitness had constructive knowledge of the dangerous condition, "neglected to consider the evidence supporting an inference of *actual* knowledge." (Original bold and italics.) She asserts that the evidence, namely, the May 1 checklist, and the inferences reasonably drawn from that evidence, presented "more than enough to create a prima facie case of actual knowledge sufficient to survive summary judgment."[13]

A plaintiff asserting a claim for premises liability must show that the owner knew or reasonably should have known about the claimed dangerous condition on the property. (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1206 (*Ortega*).) As the California Supreme Court has explained, "Because the owner is not the insurer of the visitor's personal safety [citation], the owner's actual or constructive knowledge of the dangerous condition is a key to establishing its liability. Although the owner's lack of knowledge is not a defense, '[t]o impose liability for injuries suffered by an invitee due to [a] defective

---

**13** Although not addressed by the parties, it appears that the premises liability claim fails based upon the same reasoning discussed above with respect to Joshi's gross negligence claim (see pt. II.C.2., *ante*). A premises liability claim is founded on a theory of negligence. (See *Ortega*, *supra*, 26 Cal.4th at p. 1205 [premises "owner is not an insurer of the safety of its patrons . . . [but] does owe them a duty to exercise reasonable care in keeping the premises reasonably safe"]; see also *Castellon v. U.S. Bancorp* (2013) 220 Cal.App.4th 994, 998 [elements of premises liability claim are identical to claim for negligence, i.e., "duty, breach, causation, and damages"].) Since a claim for ordinary negligence was not maintainable here because of Joshi's execution of the Release, her premises liability claim would likewise fail unless she were able to establish that Fitness's conduct constituted gross negligence.

condition of the premises, the owner or occupier "must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him [or her], he [or she] should realize as involving an unreasonable risk to invitees on his [or her] premises. . . ." ' [Citation.]" (*Ibid.*) "[W]here the plaintiff relies on the failure to correct a dangerous condition to prove the owner's negligence, the plaintiff has the burden of showing that the owner had notice of the defect in sufficient time to correct it. [Citation.]" (*Ibid.*) "The plaintiff need not show actual knowledge where evidence suggests that the dangerous condition was present for a sufficient period of time to charge the owner with constructive knowledge of its existence. Knowledge may be shown by circumstantial evidence 'which is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts.' [Citation.]" (*Id.* at pp. 1206-1207.)

Here, the basis of Joshi's assertion that she raised a triable issue of material fact in support of her premises liability claim is that Fitness, as demonstrated by the May 1 checklist, had actual (or at least constructive) knowledge of the burned out sauna light bulb prior to the incident. Because, Joshi argues, the condition was discovered—she *claims* in her appellate briefs—on the morning of May 1 and "the long delay in replacing the lightbulb would be thoroughly unexplainable," the trial court erred in granting summary judgment in favor of Fitness on her premises liability claim. Joshi's argument has no merit. As we have discussed, *ante*, there was no evidence presented below that the May 1 inspection that resulted in the creation of the May 1 checklist indicating that the sauna in the women's locker room " 'need[ed] repair' " *occurred in the morning*. Indeed, there was no evidence at all as to the time of day the May 1 checklist was generated—it could have been sometime before 7:30 p.m. when Joshi was injured, or it could have been after 7:30 p.m. Therefore, even if one were to infer that the indication that the women's sauna " 'need[ed] repair' " referred to a burned out light bulb, Joshi did not present evidence—through the May 1 checklist or otherwise—that Fitness had actual

22

or constructive knowledge of the dangerous condition prior to the incident. Her claim for premises liability was therefore properly disposed of through summary judgment. (*Ortega*, *supra*, 26 Cal.4th at p. 1206.)

Joshi also argues that "a release is not valid where the specific act is not identified and the injury is not a known risk." Although she cites law on this issue, she does not clearly state that, *in this particular case*, the Release she signed was invalid because it did not cover the specific risk of injury from use of a sauna.[14] Joshi cites *Leon*, *supra*, 61 Cal.App.4th 1227, asserting that it held that "a release did not provide for express assumption of the risk of injury in a sauna." In *Leon*, the plaintiff sued a fitness club for injuries sustained when a bench he was using in a sauna collapsed. (*Id.* at p. 1230.) After summary judgment was granted on the ground that the release barred the negligence claim, the appellate court reversed, concluding that "the purported release [was] neither sufficiently conspicuous nor unambiguous to insulate [the defendant] from liability to [the plaintiff] for injuries received when its sauna bench collapsed." (*Ibid.*) The court held that the release language was not differentiated within the membership agreement by a separate heading, larger type, bold lettering or otherwise calling the reader's attention to it as an exculpation clause. (*Id.* at p. 1233.)[15] The appellate court also rejected the contention that the plaintiff, by signing the agreement, had expressly assumed the risk of injury, concluding that, while injuries from exercise activities, use of fitness equipment,

---

[14] Assuming Joshi is arguing that the Release did not bar her claim for premises liability because she did not expressly assume the risk of injury from an accident due to sauna use, since premises liability is founded on negligence (*Ortega*, *supra*, 26 Cal.4th at p. 1205), the position appears inconsistent with Joshi's concession that the Release barred her claim for ordinary negligence, but not gross negligence (see pt. II.C.1., *ante*).

[15] In contrast, the Release that was part of the agreement here contained a separate, all-capitalized heading reading "**IMPORTANT: RELEASE AND WAIVER OF LIABILITY AND INDEMNITY**," was written in larger font, and contained lines bordering all four sides of the text to distinguish it from the remainder of the agreement.

23

and even slipping and falling in the shower were assumed risks, "the collapse of a sauna bench when properly utilized is not a 'known risk.' " (*Id.* at p. 1234.)[16]

 *Leon* does not support Joshi's apparent position that, under the Release here that was part of her membership agreement, she did not expressly assume the risk of injury from her use of the women's sauna. The accident resulting in injury here—tripping and falling while attempting to sit on a sauna bench—is distinct from the accident in *Leon* in which the plaintiff was injured because a sauna bench on which he was sitting collapsed. The accident here is much more aligned with slipping and falling in a locker room shower—a risk that the court in *Leon* found to be assumed by a fitness center patron. (*Leon*, *supra*, 61 Cal.App.4th at p. 1234.)[17]

---

 [16] The risk-assumption language in *Leon* was much narrower than in the present case. In *Leon*, the agreement read in part: " 'Buyer is aware that participation in a sport or physical exercise may result in accidents or injury, and Buyer assumes the risk connected with the participation in a sport or exercise.' " (*Leon*, *supra*, 61 Cal.App.4th at p. 1231.) In contrast, here, Joshi accepted and assumed responsibility for risks of "injuries arising from use of exercise equipment and machines; injuries arising from participation in supervised or unsupervised activities or programs; injuries and medical disorders arising from exercising . . . ; [and] *accidental injuries occurring in dressing rooms, showers and other facilities*." (Italics added.)

 [17] Joshi also contends that Fitness cannot rely upon the doctrine of primary assumption of the risk to defeat liability, because Fitness increased the risks associated with the use of a sauna by "[p]ermitting the sauna to remain operative without a light source." It is not clear that the doctrine would apply here. The primary assumption of risk doctrine is based upon the principle that " 'some activities—and, specifically, many sports—are inherently dangerous. Imposing a duty to mitigate those inherent dangers could alter the nature of the activity or inhibit vigorous participation.' [Citation.]" (*Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148, 1154.) The parties have cited no authority that using a sauna is an inherently dangerous activity. Even were the doctrine applicable—an issue we do not reach here—because there was no evidence below that Fitness had actual or constructive knowledge of the sauna's having a burned out light bulb, it did not increase the risk associated with the use of a sauna.

## III.    DISPOSITION

The judgment of February 26, 2020, entered on the order granting summary judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
DANNER, J.

_____
WILSON, J.

*Joshi v. Fitness International, LLC*
**H048115**

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MANSI JOSHI, | H048115 |
| | (Santa Clara County |
| Plaintiff and Appellant, | Super. Ct. No. CV337351) |
| v. | |
| | ORDER CERTIFYING OPINION |
| FITNESS INTERNATIONAL, LLC, | FOR PUBLICATION |
| Defendant and Respondent. | |

THE COURT:

The opinion in the above-entitled matter filed on June 14, 2022, was not certified for publication in the Official Reports. The Association of Southern California Defense Counsel and Yoka & Smith LLP request the opinion be certified for publication. Under California Rules of Court, rule 8.1105(c), the opinion is ordered published.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.




_____
DANNER, J.




_____
WILSON, J.

*Joshi v. Fitness International, LLC*
**H048115**

Trial Court:                                    Santa Clara County Superior Court


Trial Judges:                                   Honorable Thang Nguyen Barrett
                                                Honorable Mark H. Pierce


Attorneys for Plaintiff and Appellant:          Cory R. Weck
                                                Steven A. Haskins
                                                Brynna D. Popka
                                                Sandy G. Gonzalez
                                                McCune Wright Arevalo, LLP


Attorneys for Defendant and Respondent:         Alice Chen Smith
                                                Christine C. De Metruis
                                                Yoka & Smith, LLP


*Joshi v. Fitness International, LLC*
**H048115**